U.S. Attorney, and counsel are not here yet. Here we go. Mr. Bray, Ms. Flores, Ms. Cantor. Welcome to the Fifth Circuit. I'm Judge Dennis, and I'm sitting with Judge Higginson and Judge Acosta, who will be your panel today for this case. And so we'll begin hearing from Mr. Bray and Ms. Flores. Good afternoon, Your Honor. May it please the court. My name is John Michael Bray, and I represent Darlene Reyes, the petitioner in this case. We're here today because the Board of Immigration Appeals misstated the facts, which the government repeated in its brief, and that produced an erroneous conclusion of the law, essentially forcing a square peg into a round hole. Now, my client's credibility was not called into question. My client was found generally credible by the immigration judge. And so the undisputed or uncontroverted facts are as follows. The petitioner was the wife of a Guatemalan politician who was assassinated in the weeks after he received death threats from their political rivals, members of the family of Isidro de León, who were members of a center-right party called the CREO party. Now, before her husband's death, Ms. Reyes carried out all of the typical duties of a political wife. She had actively campaigned with her husband. She had gotten to become very well acquainted with members of their community, and the city was named Pajapita. But after her husband's death, after she reported her husband's death to the authorities in Pajapita, Ms. Reyes was approached by her party, by the El Torito Civic Electoral Committee, that's the name of her party, which asked her to become the party's leader, since she was so well-known by members of their community. She reluctantly declined, however, because she too began receiving death threats from their political rivals, from the de León family. And in the ensuing six years, Ms. Reyes became the target of a sustained, systematic effort, including at least eight separate examples of persecution, with the goal of removing her from the political scene by attacks organized and carried out by the de León family. Now, I mentioned the IJ decision, the immigration judge decision, Your Honors, because it influenced the decision of the Board of Immigration Appeals. So it is also subject to this court's review. And that's, for that authority, I would cite to Wang versus Holder, which is a decision of this court. When you say eight separate examples, how many of those eight are directly against her, rather than imputed harm that actually physically focused on her husband, her daughter, or her son? Six were against her, Your Honor. Now, that's true. There was one instance of harm against her daughter or attempted harm against her daughter, which was when the de León family attempted to kidnap her daughter. And in addition to that, yes, her husband was assassinated, which began the series of persecution against my client. I guess my question is focusing mostly on what seems to me to have sort of bedeviled our court, and we've often just dealt with it in unpublished opinions. But what past persecution is sufficiently extreme to count as harm? And it's a complex world if you're entirely relying on harm to others. I see ambiguity. Others may not see ambiguity there. But I guess what I'm asking you, let me turn this into a question. It's a little long-winded. Is it correct that the IJ and the BIA and or the government on its appeal to us? I don't know, but you'll tell me. State that the record describes only one time of she being beaten physically, but that the record is conclusive there was a second time? Did the IJ, the BIA, and the government all make that record that is indisputable? That's absolutely correct, Your Honor. Yes, and thank you for the opportunity to address that. Yes, that's absolutely correct. My client, that is to say, Ms. Reyes herself, was harmed on three specific instances. The first time she was harmed was in the marketplace in Meseta after having left the city of Pajapita. And then there were two instances of harm that occurred in the first week of January of 2016. The De Leon family, so my client went to, after trying to internally relocate within Guatemala, Ms. Reyes and her family returned to Pajapita. And within six hours of returning to Pajapita, the De Leon family showed up on her doorstep. They beat her up. They left to go get weapons. And when they came back, they found she was gone. She'd gone to the house of a neighbor of hers. And then that's when they beat her up a second time, right? I'm sorry, this is actually a third time, but second time on that day. And that's when they also put a pistol against her son's head. Do you know of any circuit law that says that being physically beaten, physically beaten, isn't extreme enough to qualify as past persecution? I do not know of any circuit precedent that states that being physically beaten is not enough. It can be, but it is a circumstance specific issue. I would note that the case law of this circuit in Tamara Gomez versus Gonzalez has held that it is not necessary to suffer an instance of physical harm in order to give rise to persecution. And in fact, in the Tamara Gomez case, that was a case that concerned, I believe it was a helicopter pilot who'd been targeted by the FARC in Colombia. And he himself was never physically harmed, but others who were similarly situated to him were harmed and in fact killed. And that's similar to the facts of this case, Your Honor, where my client's husband was killed because he was the leader of a political party that she was then asked to lead. So the three main reasons why we continue, Your Honor, that my client did suffer past persecution were because of her identity as a political wife and a politician in her own right, because, you know, let's face it, she was asked to assume the leadership of her party. And that was the main, the main... But the beatings were more because she went to the police, correct? They came after she'd gone to try to report the crime and the cops said, you'd rather, you'd do better leaving this alone. Well, the police did say that, but it was around the same time that my client was also approached by her members of her own party to lead the party, because this was in the lead up to the elections, which took place in May of 2011. Do you agree with me that the law of imputation, it's more difficult to impute the terrible and tragic assassination of her husband, but it isn't even really asking us to impute if a gun is held to a child's head in the presence of the mother being beaten. That's more harm directly to her, would you say? Is there a law that supports that or is that still imputation of harm to another? Well, Your Honor, essentially what our position would be is that it's one thing if another person is harmed. But when that other person, in this case, the child, my client's child was harmed in my client's presence, you know, leave this alone, stay out of politics or else we're going to kill your family. It's very clear what the message was, that even if you don't stop in politics, even if, you know, avoiding your own death is not enough, we'll kill your family to make sure the consequences go beyond just you. Granting all that, though, does it detract from your case that she was able to live in at least two cities without being molested during a five year period? And her main tormentor, as I read the record, is now deceased, has been killed. And Your Honor, I see my time has just expired. May I answer this question? Yes. So I don't believe that detracts from our position at all, Your Honor. And the reason why is because the last instance of persecution, which occurred in January 2016, was ostensibly after her political rival, Isidro de Leon, had already left the mayorship of their town. And it doesn't matter that she lived in other parts of Guatemala because of the fact that she, you know, she was essentially trying to avoid persecution. And my co-counsel will talk about further about this in the internal relocation segment. Thank you very much. Thank you, sir. Ms. Juarez? You may speak. Good afternoon, Your Honors, and may it please the court. My name is Yadira Juarez, attorney for petitioners. So just going off of what my co-counsel said, I think that this is another important fact, undisputed fact, that both the board, the immigration attorney, as well as the government, have mischaracterized. Ms. Reyes did not live comfortably in the cities that she relocated to. And so, first of all, she left Pajapita to Mesata, which is approximately seven hours away from Pajapita, to escape the, essentially she'd gotten death threats, and she left because they had assassinated her partner. And in Mesata, she was persecuted, physically harmed by the De Leon family. And so after that incident happened, she moved to the city of Raul, which is approximately nine hours away from Pajapita. And so there she lived, she testified credibly that she lived for about approximately two years. However, she encountered, well, didn't encounter, she saw the De Leon family, the same people that had already physically harmed her before, there in the marketplace. And so at least under this court's precedent, specifically under Rivas Martinez, you know, the court doesn't require, an applicant is not required to full-heartedly court death by confronting her persecutors in order to qualify for asylum. What about Guatemala City? I think that's the one place where there wasn't that type of harassment and threats and violence. That's correct, Your Honor. And so, Ms. Reyes asserts that for purposes of internal relocating, the fact that she did not successfully internally relocate, the analysis for that is not, does not require harm to occur in every single city that's relocated to, but simply that on a countrywide basis, whether that person will, has a fear of future harm. And so that is where Ms. Reyes asserts that there is a pattern and practice of persecution against mayoral candidates in Guatemala that exists, you know, up until today. And so the record evidence shows that. But you're saying Guatemala City, even though she lived there, doesn't count because you're saying she could be persecuted there? I thought there was an argument just about whether it was an adequate, you know, place to live, given the other challenges she dealt with there. Well, that's what Ms. Reyes testified to. But as far as relocating to Guatemala City specifically, it's important to note the undisputed facts that she moved to Guatemala City approximately five years after her partner was murdered. And then she testified credibly that the reason why she relocated or moved from Guatemala City back to Pajarita is because she thought that they had forgotten about her. So much time had passed that she thought that she would be safe going back to her home. I mean, she left everything that she had there, her home, as well as her connections, her political ties, everything. I guess I'm still trying to figure out why is Guatemala City not a reasonable relocation? Because you're saying she has a reasonable fear of persecution there? Or is it some other reason? No, Your Honor. Guatemala City, I think it plays into the analysis to the extent that she did attempt to relocate multiple times. The government tries to characterize the relocation issue as her just traveling at her leisure unharmed for five years when it's just simply not true. And as far as the factors, Guatemala City is one of the factors that's considered in matter of MZMR for purposes of analyzing relocation. And so that is just one of those factors which Ms. Reyes asserts actually helps her case in that she did relocate there, but she moved back to Pajarita after so much time of being away. And within six hours of arriving back in Pajarita, five years later, she was physically harmed again. And that is when she left Guatemala. And also, as far as the pattern or practice issue, again, up until the time of her removal proceedings, the record evidence shows that mayoral candidates were continually subject to being murdered, being harmed on just based on their political opinion alone. And in fact, Ms. Reyes asserts that she does have a current fear of future persecution based on if the court will just take judicial notice of the fact that the Guatemala, the congressional building, was burned down in November of 2020. So there is political strife that still continues to exist in that country. The father, the father de Leon, he was eventually killed. Is that undisputed? Your Honor, I am not aware of him being killed. What I do know, what the record shows, is that one of his sons was killed. The primary perpetrator, persecutor of your client was Marvin. Is that right? Well, that is the person who Ms. Reyes testified physically assaulted her. However, she maintains that it's the Isidro de Leon, at the time that she was physically harmed, Isidro de Leon was the mayor of Pajarita. And in fact, the IJ relied on the fact that this family controlled at that time of the decision, April 2018, that three, the family controlled three towns in the area. Am I right in remembering that when her husband's killed within the same week, an earlier candidate had been killed too? Or is that wrong? No, that's correct, Your Honor. So two opposition candidates are killed in a row, then the father de Leon becomes mayor, and then your client is beaten at least twice. The reason I was focusing so much on the harm in the past persecution, am I correct legally, that if the record compels that there was past persecution, that would change the presumption relating to relocation? Yes, Your Honor. And in fact, Ms. Reyes just wants to draw to the court's attention that because she maintains that she did establish past persecution, that the presumption of well-founded fear of future persecution should apply, which based on the record evidence, DHS did not provide any evidence. And in fact, I would cite to Singh versus Sessions 2018 case from this court in which the court took note of the record evidence that DHS produced no evidence on this issue, despite the fact that it bore the burden of proof. Thus, the government's argument today regarding relocation is at best perfunctory. And as a result, the agency relies solely on the record evidence produced by Ms. Reyes to support what constitutes an erroneous factual finding that necessarily and did create legal conclusions that were also errors of law in her case. And so I see my time is ending here soon. So I just want to, again, establish that Ms. Reyes did establish past persecution. The well-founded fear of future persecution, the presumption should have applied in her case. It didn't. Or the DHS did not provide any evidence the record is bearing on the issue of relocation or any rebuttal evidence really for this presumption. And also that Ms. Reyes, based on the record evidence, has shown that she does, there is a 10% chance that she will be harmed if returned to Guatemala. And with that, thank you. My time's up and I thank you for your time. Thank you, Ms. Flores. Ms. Cantor. May it please the court, Nancy Cantor on behalf of the Attorney General. The court should deny the petition for review today as the agency's determination that petitioner failed to demonstrate past persecution or a well-founded fear of future persecution is supported by substantial evidence. With respect to the agency's past persecution, the record simply does not compel reversal of the agency's determination that all of the harm suffered by petitioner rises to the level of persecution. As we discussed earlier, or as the court was questioning and discussing earlier, petitioner suffered only voice and texts and letters threatening her while in Pajabita. And there was, of course, the attempted kidnapping of one of her children. Counsel, I mean, this is frustrating to me, but correct me if I've got a wrong premise. I mean, the BIA and the IJ do conclude the harm she didn't didn't rise to the level of extremity. And I'm going to put aside that her husband was killed and her daughter may or may not have been kidnapped and they may have shot guns outside her house. But if she's beaten twice and the IJ and the BIA don't even acknowledge the time it happened in her home. But correct me if I'm wrong and you don't even in your brief. But she's credited that she was beaten up physically in her brief. Tell me any circuit case that says that doesn't rise to the extremity that qualifies. Physically being beaten with your son having a gun at his head. I just need to know the case. Well, Your Honor, I believe the government does mention on page eight of its brief does acknowledge that upon her return to Pajabita, she was approached by De Leon's sons who entered her house, beat her and pointed a pistol at her head at the head of her oldest son. So the government does concede that happened in 2016. But the question again here is whether one instance of physical harm rises to the level of persecution. Wait a minute. I'm just not going to let you say that. She was beaten in a marketplace in front of the public also. Why is that one instance? Correction, Your Honor. My understanding of the record is not that she was beaten in a marketplace, but rather that she was in a marketplace selling clothing and that her inventory was thrown around. So she herself was not physically harmed as a result of that encounter. Moreover, the encounter in Masada and Raul, both instances in which she was no longer in Pajabita, but had relocated to two separate instances. The encounters with the De Leon family were there was no evidence that she was targeted. They appear to be chance encounters. So, again, there just isn't anything, you know, the government's position is that there isn't anything in the record that compels the conclusion that she was suffered. The harm she suffered rises to the level of persecution. What is your best circuit authority that being physically beaten in your own home with or without a child having its gun to its head doesn't rise to the level of persecution? That's the case I want. Circuit authority, any court. I would have to look and double check, but I know we say that's what this case is, counsel, and it's a really important proposition. You have to look. Did you cite one in your brief? We did cite Edward, but I can't confirm right now whether or not the petitioner was in his home. I know that in that case, the petitioner was stoned and suffered a head injury, and that did not rise to the level of persecution. I would be happy to conduct research on the point as to, you know, on the specific points as to in home and a child present at the time, but I don't have that case here before me right now. Again, let's not be semantic. I'm not saying in home, child present. I'm saying in home, beaten up, physically beaten, and a gun to your head or your child. Is the United States Department of Justice saying that doesn't rise to extremity sufficient to show past persecution if she's credited? Is the government saying that? We're saying that the board's determination, the record does not compel reversal of the agency's determination. I don't think that it does, given in light of this court's other holdings that beatings alone, a single beating alone is not necessarily sufficient to compel reversal of the agency's determination. Okay, and your best authority for a single beating alone not being sufficient is what? Is it the Rock case that's thrown? That is the case that we've cited in our briefs, yes. That's what I thought. I mean, and if the government, and if I will go ahead and address the court, the second issue that the court mentioned in discuss with petitioner, if the court finds that the record does compel reversal of the agency's determination, then the government respectfully asks that the court remand to allow the agency to apply the correct presumption that the petitioner, having demonstrated past persecution, has a presumption of a well-founded fear. But in light of the fact that the government, or in light of the fact that the board found that there was no past persecution, of course the presumption was not applied in the agency's decision below. Now, unless the court has any other questions, I'd be happy to discuss, but, you know. I mean, you're right, the IJ and the BIA, you absolutely continue to argue it, because if the burden's on her, then it is a somewhat complex, the two other issues that are complex are, she is found maybe randomly by accident once, but then she seems somewhat safe in Guatemala City. So that's, and the other issue is, can you ever impute the assassination of a husband to the woman who has the same political views, and then complains, and those are two interesting difficult areas. My colleagues, I don't know what they're thinking on this case, they may want you to address it on those points. Well, I'm happy to discuss internal relocation for sure. I mean, in this case, the petitioner moved to Masada Raul, both times she had encounters with the de Leon family but they were chance encounters that did not result in physical harm to the petitioner. When she moved to Guatemala City she was able to reside there, I presume peacefully, and her decision to return to Pajapita was because of just insufficient space and living conditions circumstances there. You know, so, given the absence of any evidence here that the harm petitioner suffered was by state actors. I don't believe that the agency's determination that she could internally relocate, and that she failed to demonstrate that she could not is not supported by substantial evidence on the state action do you want to address the 28 J. The other side filed about the reversal of the matter of a B decision. Sure, Your Honor. You know I struggled with the 28 J because the matter of a B matter of la you know the agency's decision in this case is the final agency decision in this case is the board's decision, and the board's decision does not get into whether or not petitioners and the Crawford social group is cognizable under the act or whether or not there was sufficient nexus. So the government's position would be that those issues are not before the court in terms of its scope of review, should the court disagree on the past matter of a B or matter of la requires the court to address those issues in light of the manner in which the board dispose of the appeal. Thank you. Now Council. I mean, again, the facts make all the difference here I'm reading from the record record on 122, she's asked and remember she's credited. What happened at that moment I used to sell clothes in the market continue. I was selling clothes in the market when they arrived and they saw me and they beat me, and they beat me. So she didn't say it was just the clothes being thrown around. All right, I apologize for that really important to be exact on. No, I agree, Your Honor, and I apologize for that. You know, a single beating, or even two beatings the question, or even two. Well, if the court disagrees with the agency's decision that past that the harm suffered does not rise to the level of persecution, the court can remand for the agency to reconsider its decision. What is that level. What level do we have to find what, what level. Sorry. Yes. You said if the, if we find the evidence doesn't rise to the level. What is the level. Well the court, you're finding the court's finding would be that the record compels the conclusion substantial evidence in the record compels reversal of the agency's determination that the harm suffered rises to pass persecution. So, that is the standard that this court would apply in remanding it to the agency for reconsideration of past persecution and the application of the right presumption, with regards to a well founded fear. Well you hear my exasperation it's because what is the record compel I think we now agree the record compels she was twice physically beaten. I don't hear you disagreeing. The second time was in her home. The second time with a gun to head to her children, her child. Okay, so I would expect the government would have a pretty confident position as to whether or not that's past persecution, and whether the record now compels that. I mean the you all are specialists you see this every time so it's not just saying we can do that. The government should know, I mean your position should be yes or no you see these around the country all the time. This is a very important issue what is the level of harm slaps on the wrist no handcuffs courts have said no. I don't see a circuit ever saying physical beating in the home twice with a child. So I'm really startled that the government doesn't can't confidently say yes or no. Your Honor, I mean I understand the courts. I understand the courts frustration here and you know it's a personal frustration of course that I have when we talk about whether or not harm rises to the level of persecution, there is always harm that is without a doubt persecution, but it is the when does it rise, when does it cross the line. Here, you know, if the court disagrees with the board remand is appropriate, but the government's position today is that the board's decision is supported by substantial evidence. Okay. Now, substantial evidence is enough. I'm sorry. Yes, the board's decision is supported by substantial evidence. If this court disagrees and finds that the record compels reversal of that determination. That's certainly up to the core and the courts prerogative. And unless the court has any additional questions at this time I'm happy to yield. Thank you, Mr. Thank you. Mr. As far as have two minutes for each, each two minutes each. Thank you very much, Your Honor. And if I may just, if I may just explain our site our position on a few things here, going to the issue of, you know, some of the factual assertions. It would be our position, Your Honor, that, you know, at page 122 of the record on appeal. Yes, my client was in fact beat in the marketplace in the setup, or I'm sorry Masada. And she was also be on a separate occasion, and 2016 January 2016 when she returned to Baja Peter, I would actually contend that that was two separate episodes that occurred on the same day in January 2016. One was in her own, and then the second instance on that day was in her neighbor's house. And actually there is Fifth Circuit authority for the fact that two separate assaults that occurred in two separate episodes, even if they're on the same day constitute separate attacks now grab that's from a criminal case it's United States versus Moreno it's a Fifth Circuit case from 1980 I have the citation available. If needed. That's 630 federal second 338, but that's that would actually be three, three instances of physical harm that my client herself suffered. I would also like to address that, you know, in unlike in get tiny versus bar. Miss Reyes was actually beaten three times, once in Masada once in Baja Peter and again in Baja Peter, and then what about their site they she did cite the Edward case I remember that stone throwing case it's always confused me because I'm looking for a bright line rule here, I thought it was verbal harassment not enough physical or injury Yes, but what about that stone throwing case. Well, Your Honor, I believe that I believe that, you know, whenever there are two instances of harm and we would contend that whenever there are two, at least two instances of physical harm physical beating that that would be enough. I just have one final point here, we believe that nexus is important here because the IJ decision influence the BIA decision and under Wayne versus holder it's clear that my clients political opinion was the reason was at least one central reason for her harm and thank you very much. Thank you, sir. Yes, Your Honor. So Judge Higgins, I think highlights and has repeatedly targeted the the issue in this case, the main issue which is the mischaracterization of the undisputed facts, the government in omission convenient omission of that of the of the facts. In fact, the government. My co counsel stated what the past persecution was. And based on that, we also contend that she does have a well founded your future persecution because the IJ the board the government up until this point mischaracterized omitted the undisputed facts, which was, which was, she did not successfully relocate twice within Guatemala, the by any means, those were not the only thing that she succeeded was to remain to avoid persecution persecution she lived in hiding. And so, she, there is a bit Fifth Circuit precedent on the issue that I disputed that when she was in Guatemala City and they never found her she wasn't hiding is that I don't remember the record well. Well, she testified that she did go there to and leave from Raul to Guatemala City. She also testified that she left Guatemala City, because it had been five years since her partner had been murdered. However, six hours after she arrived in Pajarita she was physically assault harmed. And so, um, the thing is also that the government asked for a remand However, you know, the time for apologies has come and gone. Um, and so we believe that the record evidence shows the record that this court can make a decision based on the record evidence which, based on the court of the judge Dennis's dissent on good Tony versus bar the court has leeway de novo review of the, of the case, but also that the substantial evidence does support the contention that the court can reverse and should reverse the denial of asylum and this raises case with that thank you for your time. Thank you. That concludes our final days for argument today. So, this court will adjourn until 1pm tomorrow.